J-A12023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| J.E.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.D. | : | |
| | : | |
| Appellant | : | No. 2842 EDA 2025 |

Appeal from the Order Entered October 7, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2023-03380-CU

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JULY 10, 2026**

A.D. ("Mother") appeals from the order, entered in the Court of Common Pleas of Chester County, granting shared legal and physical custody of minor child J.F. ("Child") (born 8/15) to her and J.E.F. ("Father").  After our review, we affirm.

The trial court thoroughly summarized the testimony at the custody hearing in this matter as follows:

> [Father] and [Mother] are the parents of [Child].  This matter comes before the court on Father's petition to modify custody filed in December 2024.  Father seeks shared physical custody; Mother opposes the petition and wishes [to] retain primary [physical] custody of [Child].  Legal custody is shared and not at issue.  Trial was held over two days on September 23, 2025 and September 24, 2025.
>
> . . .

_____

[*] Former Justice specially assigned to the Superior Court.

After a nine-year marriage, Mother and Father divorced in October 2020, when [Child] was five years old. Father testified he was working as an executive chef at that time, which entailed keeping irregular and demanding hours and which prevented him from spending much time with [Child]. He indicated that he was also drinking routinely then, as is customary in the restaurant industry. At the time of their divorce, the parties agreed that Mother would have primary [physical] custody of [Child]; Father testified that this was because his work schedule only allowed him to firmly commit to certain times and he didn't want to put himself in a position of not exercising scheduled custody. But, he testified, that agreement "is regrettable now because I didn't realize how hard it would be to get time back."

In July 2021, Father had an epiphany while riding the Ferris wheel with [Child] at the Malvern Fair. He testified that [Child]'s capacity for wonder and joy in that moment struck him in a way that made him truly comprehend the ephemeral nature of childhood, and of life. He realized that too much of his time was consumed by his career and its appurtenant vices, especially alcohol. Father never drank again after that moment. Also around that time, Father began to significantly dial back from his high-powered career to spend more time caring for his mother, who has Alzheimer's disease, and for [Child]. At some point, Father stopped working outside the home altogether.[1]

[1] The notion arose at trial that father's "unemployment" should weigh against him. While the court certainly does not attribute this notion to Mother, the court feels compelled to note that, as a married couple, Father and [his wife] Amber's division of labor within their household is entirely their prerogative so long as they can support themselves and [Child] and meet their financial obligations, which all evidence indicates they can. That Father chooses not to work outside the home is his and Amber's decision, and one that in all likelihood would not be second-guessed if Father were a woman. The court does not weigh this against Father.

Father's relationship with his wife[,] Amber, who is also sober, began shortly after the Ferris wheel moment. Father moved into Amber's home in Nazareth, Northampton County, sometime in 2022[.] Around this time[,] the parties agreed to slight changes in their custody arrangement to reflect that Father was now living an hour and a half away. The informality of this arrangement, as

- 2 -

well as developments in both parties' personal lives (not the least of which was Father's move to Northampton County) caused significant breakdown in the parties' ability to synergistically co[-]parent, and Father filed this custody action in May 2023. The parties agreed to a stipulated custody order in August of that year, under which Father had partial custody on alternating weekends. Father testified, however, that he believed Mother would be open to discussing shared custody if Father moved closer to her home in Malvern.

To that end, Father and Amber purchased their current home in rural Boyerstown, Berks County, in August 2024. The Boyertown home is 45[ to ]50 minutes from both [Child]'s school and Mother's home in Malvern. Father and Amber keep many animals on their property in Boyertown, which Father hopes to also turn into a working honey and mushroom farm. Father testified that [Child] loves spending time with the animals and exploring the wooded property and that he regularly completes his chores, which include feeding the ducks and helping to keep the house in order. Father enjoys taking [Child] to his hockey practices, playing video games, and attending special events together. [Child] has a good relationship with Amber's nieces and nephews and has friends in the area. [Child] has his own room and game room at the Boyertown home but spends much of his time outside. Father drives [Child] to school every other Monday morning, and while the drive takes around 45 minutes, Father testified that he finds this time meaningful because [Child] tends to open up to him while in the backseat (a common phenomenon for tweens and teens who prefer not to make direct eye contact with their parents for some reason that remains a biological mystery). During these drives, Father and [Child] also call [Child]'s grandfather, tell jokes[,] or work on times tables.

Father testified that [Child] has recently questioned why he can't spend more time at Father's house. To his credit, Father has responded simply that this is the arrangement, without mentioning that he is seeking more time in this action. But Father is worried that [Child] is starting to think that Father doesn't want to spend more time with [Child].

Amber, [Child]'s stepmother, clearly cares for [Child] deeply and has essentially built her life around Father[] and [Child]'s relationship. Amber testified that she specifically chose her current career path as a facility manager so that the couple would be financially secure and have health benefits so Father could

solely focus on being a parent to [Child]. She also sold her house and turned another property into a rental for the income it could provide and moved so Father could be closer to [Child]'s Mother and school. Father and Amber testified that [Child] has been involved in every aspect of their relationship and [] even helped Father propose to Amber. Father and Amber had a long engagement because [Child] had been through many recent changes and they wanted to ensure [he] was emotionally secure before they tied the knot. Amber acknowledged that she is not [Child]'s mother and she tries not to cross any boundaries in respect of that role. Amber described herself as a loving and caring adult in [Child]'s life who would always support him. [Amber believes that Father respects Mother's relationship with Child and that he also supports any efforts to foster and strengthen Child's relationship with her.] The court credits this testimony.

Heather Laurnan, Amber's sister, lives only nine miles away from Father's house and has two children. She has known Father and [Child] for approximately four years and the families often get together and travel for holidays and other events. Heather described [Child] as a very bright and creative boy and [stated] that he has fun with her two slightly older children. Heather testified that Father is an attentive and engaged father whose love for [Child] is very apparent. She observed that Amber, Father, and [Child] are a tight family unit.

Mother is employed as a teacher in the Tredyffrin/Easttown School District and lives with her husband, [J.D.], their two-year-old twins, and her stepson[,] Cameron. Mother and [J.D.] first met in grade school but lost touch until they reconnected in November 2021 and subsequently married in 2023. In anticipation of their growing family, Mother and [J.D.] bought a larger house in late 2023. [Child] attends school in Mother's district and rides the school bus when he is at Mother's house. [Child] is close to his half siblings and loves to play with them. He also enjoys spending time with [his stepbrother,] Cameron[,] when they are together and the two boys share a bedroom.

Mother appears to be a very passionate and involved parent to all four children in her blended family. She is supportive of [Child]'s numerous extracurricular activities and encourages his friendships with other neighborhood children. Mother strives to make their blended family a cohesive unit—no small task—and loves hosting family members. She cherishes [Child]'s interactions and

playtime with his half-siblings. Mother enjoys making breakfast for [Child] in the morning and cheering him on at soccer games and hockey matches. She supports his school extracurriculars, such as student counsel and forensic club, and has gone to great lengths to ensure [Child] can participate in anything he desires.

[J.D.] appears to be a great stepfather to [Child] and seems to love him as if he were his own son. [J.D.] coached [Child]'s flag football team, cheers him on at events, and supports [Child]. [J.D.] makes lunch for [Child] every day he is at their house, and he walks him to the school bus stop every morning. [J.D.] works from home and is always available in case of emergencies. He clearly loves Mother and [Child] and has integrated them into his extended family. Like Amber, [J.D.] has established appropriate stepparent boundaries and honors Father's role. [Child] is lucky to have [J.D.] and Amber as stepparents.

Renee Stern, [J.D.'s] mother, describes Mother as a wonderful homemaker and mother. She says she lives approximately 25 minutes away from Mother and [J.D.] but often goes to their house because Mother makes her feel so at home. Renee attends every activity [Child] is involved in and [Child] calls her Mee Maw. [J.D.'s] extended family clearly loves both Mother and [Child].

Mother's extended family similarly loves [Child]. Although Mother's parents recently retired to Florida, they travel to Pennsylvania every two months or so to visit their grandchildren. [J.E.], [Child]'s maternal grandfather, spent significant time with [Child] prior to his move. His love for his daughter and grandson was very apparent at trial.

By all accounts[, Child] is a bright, creative, and fun boy who is surrounded by love and support.

Trial Court Opinion, 10/3/25, at 2-6 (unnecessary capitalization and some footnotes omitted).

Following a hearing, held on September 23-24, 2025, the trial court entered a final custody order on October 3, 2025, granting Father shared legal and physical custody of Child. Mother filed a timely notice of appeal and

concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). Mother raises the following claims for our review:

> 1. Did the trial court err as [a] matter of law when it ostensibly presumed that a shared custody arrangement was in the best interest of the minor child?
>
> 2. Did the trial court err as a matter of law when it applied an unduly onerous standard rather than a best interest of the child standard?
>
> 3. Did the trial court err as a matter of law and commit an abuse of discretion when it obligated the parties to follow all recommendations of an extra-judicial therapist?
>
> 4. Did the trial court err as a matter of law and commit an abuse of discretion in awarding shared physical custody where such an arrangement was not supported by the evidence?

Brief of Appellant, at 3.

Our well-settled scope and standard of review in matters of custody is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F.*, *III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

> An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is

also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (internal citations omitted).

Finally,

[t]he parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009).

In fashioning a custody award, a trial court is required to consider the following list of factors, set forth in 23 Pa.C.S.A. § 5328, in determining the best interests of the child.

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) The level of cooperation and conflict between the parties, including:

(i) which party is more likely to encourage and permit frequent and continuing contact between the child and the other party or parties if contact is consistent with the safety needs of the child; and

(ii) the attempts by a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's good faith and reasonable effort to protect the safety of a child or self shall not be considered evidence of unwillingness or inability to cooperate with the other party. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(3) A willingness and ability of a party to prioritize the needs of the child by providing appropriate care, stability and continuity for the child, considering the parental duties performed by the party on behalf of the child in the past and whether the party is willing and able to perform the duties in the future, and attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

. . .

(6) The child's sibling and other familial relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

. . .

(11) The proximity of the residences of the parties.

(12) Each party's employment schedule and availability to care for the child or ability to make appropriate child-care arrangements.

. . .

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant section 5328(a) factors. *See E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

Mother first argues that the trial court erred as matter of law when it "started from a foundation that shared physical custody was in the best interest of [] Child." Brief of Appellant, at 10. Mother bases this claim on the trial court's statement at the conclusion of trial that "co-parenting and shared custody and custody schedules are never ideal. And we have to start from that foundation." N.T. Custody Hearing, 9/24/25, at 100. Mother asserts that

the trial court "repeatedly elevated the presumption of equal time over the facts established at trial" and, in doing so, committed an error of law. Brief of Appellant, at 11. This claim is meritless.

We begin by noting that Mother mischaracterizes the trial court's statement. Rather than indicating that it was applying a presumption that equal custody was always best, the court was merely observing that divorce and custody schedules can be difficult even in the best of situations. *See* N.T. Custody Hearing, 9/24/25, at 100 (court stating "it's not ideal, even when you are married and [have] an intact family"). In crafting its custody order, the court carefully and thoughtfully evaluated the totality of the evidence in light of the custody factors and concluded that shared custody served Child's best interests, and its findings are supported by the record. Accordingly, Mother is entitled to no relief.

Mother next alleges that, in awarding shared physical custody, the trial court "applied an [']unduly onerous['] standard" rather than a "best interest" standard. Brief of Appellant, at 12. In support of this claim, Mother references the trial court's statement in its opinion dated October 3, 2025, that the 45-to-60 minute drive between the parties' residences is "not unduly onerous" and asserts that "[t]he individual factors under [section] 5328 are not evaluated under an unduly onerous standard, but by the best interest of the child." *Id.* at 12. Mother cites the following testimony from Father, which she characterizes as explaining why he had "previously refused to exercise custodial time during the week," in support of her claim:

- 10 -

Q: Did your [custodial] time increase under [the initial modification order entered in February 2025]?

A: Yes. Every Wednesday dinner nights, Wednesday night dinner visits.

Q: Was this sufficient for you?

A: **No, because it was awkward. I would pick [Child] up from school. He had hockey practice at 6:00. We would— I think 7:00 maybe, whatever it was. We had like a weird two hours in between with nowhere really to go. It was too far away for me to be able to go back to our house and hang out, relax for a minute. And it was too long to just— there is not a whole lot to do with a ten year old when you have two hours to chew up with nothing to do. So it was just weird.**

N.T. Custody Hearing, 9/23/25, at 46 (emphasis added). Mother asserts that the trial court "never addressed the cumulative effect that [the 45-to-60 minute] drives would have on [Child]" and that its failure to do so was "manifestly unreasonable." Brief of Appellant, at 13. Mother's claim is meritless.

First, we note that Mother mischaracterizes Father's above-quoted testimony. Rather than explaining why he "refused to exercise custodial time during the week," Father's testimony came in response to a question regarding whether the previous custody modification was satisfactory to him, given that the one additional weekday of custodial time essentially amounted to an awkward two-hour period between the end of Child's school day and the beginning of hockey practice.

Second, Mother's claim that the trial court applied an incorrect, "unduly onerous" standard instead of considering Child's best interests is simply belied by the record. The trial court addressed this claim as follows:

This [] court considered the totality of the evidence regarding the distance between the parties' residences. The court heard testimony and evidence that the approximate drive between the parties' houses is 45 minutes one way. Father testified that he and the Child enjoy true quality time on the way to school, when they call the Child's paternal grandparents, tell "the worst dad jokes of all time," listen to music, and work on math problems together. Father testified that "[i]t's a very good time, I think, when he's able to communicate with me. And it's easier for him because he's sitting in the back seat. Like, he can just talk without feeling like that dad or mom [is] looking right at you, I found." Father testified that he knows that Child feels safe talking to him because Father knows the name of Child's crush, but declined to identify the crush at trial. No evidence was presented indicating that the Child is routinely late for school or otherwise adversely affected by the drive. While Mother raised concerns about the length of the Child's commute, and testified that she believed the Child was carsick on one occasion, the weight of the evidence established that the rides to school do not undermine the Child's best interest, as they provide one-on-one quality time with Father during which the Child feels safe, nurtured, and free to express himself. It is respectfully submitted that this court's finding that a 45-minute ride to school is not "unduly onerous" is not an error of law or abuse of discretion.

Pa.R.A.P. 1925(a) Opinion, 11/24/25, at 6 (unnecessary capitalization and citations to record omitted; slightly reformatted).

Although the distance between the parties' residences is not optimal, the court found that Father's time together in the car with Child provides "a meaningful time for [them] to bond." Trial Court Opinion, 10/3/25, at 11 (finding custody factor addressing proximity of parties' residences "slightly favors" Mother). In light of the trial court's findings, which are supported by

the record, and considering the totality of the evidence, we can discern no abuse of discretion on the part of the trial court in concluding that the distance between the parties' residences is not a factor weighing heavily in Mother's favor, or undermining Child's best interests. *See R.S. v. T.T.*, 113 A.3d 1254, 1260 (Pa. Super. 2015) (finding trial court abused discretion in denying father shared custody "based on the slight unpleasantness Child may experience" as result 35-to-40 minute car ride from father's residence to school).

Mother next claims that the trial court erred as a matter of law and abused its discretion when it obligated the parties to follow all recommendations of an extra-judicial therapist.[1] Mother asserts that, while courts "are permitted to direct the parties to 'attend counseling sessions'" pursuant to 23 Pa.C.S.A. § 5333(a), the court may not delegate decision-making authority to those counselors. Brief of Appellant, at 14, citing Pa.R.C.P. 1915.11-1 (Parenting Coordinator Appointment). Mother argues

---

[1] Paragraph 7 of the trial court's custody order provides as follows:

> **Co-parenting counseling:** The parties shall engage in co-parent counseling with Kelly Hockenberry, or another counselor as mutually agreed upon by the parties. The parties shall schedule their first co-parent counseling session within thirty (30) days of this order. The parties shall follow all of the counselor's recommendations. The parties shall equally split the cost of co-parenting counseling. Parties shall continue the co-parenting counseling as long as recommended by the counselor.

Custody Order, 10/3/25, at ¶ 7 (unnecessary capitalization omitted).

- 13 -

that, pursuant to Rule 1915.11-1(f),[2] parents have the right to an evidentiary hearing before a judge in the event that they object to a parenting coordinator's recommendation. *See* Brief of Appellant, at 14-15.

In response, Father argues that

the trial court's order must be read with common sense and in context. The order does not allow the co-parent counselor unfettered discretion to make custody determinations, as Mother claims. Rather, read as a whole, the order permits the co-parent counselor to make recommendations, and appropriately requires the parties to follow those recommendations. As the trial court aptly noted, should Mother disagree with a recommendation, she may petition the trial court for special relief pursuant to [Pa.R.C.P.] 1915.13.

Brief of Appellee, at 18 (unnecessary capitalization omitted).

Similarly, the trial court opined that its directive "is not intended to, and does not, supplant either Pennsylvania law or the custody provisions of the order, nor does it curtail the parties' ability to petition the court for relief pursuant to [Rule] 1915.13 or any other applicable rule or provision of law." Pa.R.A.P. 1925(a) Opinion, 11/24/25, at 9-10 (unnecessary capitalization omitted).

We agree with Father and the trial court that the language utilized by the court does not allow the co-parenting counselor to usurp the authority granted by statute to the trial court. Moreover, in the event that Mother

---

[2] A parent's right to a hearing in the event of an objection to a parenting coordinator's recommendation is, in fact, governed by Rule 1915.11-1(g). However, here, the court did not appoint a parenting coordinator under Rule 1915.11-1 but, rather, ordered the parties to engage in counseling, as authorized by section 5333(a).

objects to the counselor's recommendations, she has recourse in the form of a petition for special relief under Rule 1915.13. Accordingly, this claim is meritless.

Finally, Mother claims that the trial court erred in awarding shared physical custody where such an arrangement was not supported by the evidence adduced at the hearing. Rather, Mother asserts that "[t]here was ample evidence that a shared custody arrangement was not in [Child's] best interest. On more than one occasion, Father provided that evidence himself." Brief of Appellant, at 15-16. Mother cites the following evidence in support of her claim: (1) Child has missed events and clubs that occurred before school on mornings where Father was responsible for transportation; (2) Child requires "stability and continuity" where "both parties testified that [he] is in need of additional help and/or support with school;" (3) both parties testified Child has exhibited increased levels of anxiety; and (4) the distance between the parties' residences requires Child to be in a car when he could be doing homework, relaxing, or hanging out. *Id.* at 16-18. Mother argues that the "only factor weighing in Father's favor was his 'extraordinary availability' due to his voluntary unemployment." *Id.* at 18.

The trial court addressed this claim as follows:

After evaluating the totality of the evidence admitted at trial in light of the factors set forth in section 5328, this [] court determined that a shared physical custody schedule serves the best interests of the Child and awarded the same. **See** 23 Pa.C.S.[A.] § 5323(a)(1); **see also** [Opinion and Order, 10/3/25 (summarizing evidence and applying custody factors)]. In weighing the custody factors, this [] court found that two factors

(Factor 4: continuity in the child's education, family and community life, and Factor [11]: the proximity of the residence of the parties) slightly favor Mother, while one factor (Factor [12]: each party's employment schedule and availability to care for the child or make appropriate childcare arrangements) favors Father. Continuity in the child's education is accounted for in Paragraph 3 of the Custody Order, which requires the Child to continue attending school in Mother's school district. With respect to the other factors, this [] court assessed each witness firsthand and weighed the factors according to its prerogative to determine the best interests of the child. The totality of the evidence admitted at trial establishes that the Child will benefit from spending a bit more time with Father as he approaches adolescence. ***See, e.g.***, N.T. [Hearing, 9/23/25, at] 68:8-69:5 [(Father testifying Child has asked for more time with him during school year)]; [***id.*** at] 83:5-85:11 [(Father testifying as to what he sees his role to be as Child's father and that he needs consistent time with Child to fulfill that role)]. This [] court's findings and conclusions are well-supported and no abuse of discretion occurred. ***See M.J.M.***, 63 A.3d at 334 [(Superior Court must accept findings of trial court that are supported by competent evidence of record)].

Pa.R.A.P. 1925(a) Opinion, 11/24/25, at 2-3 (unnecessary capitalization omitted).

Upon our careful review of the record, in particular the hearing transcripts from the September 23-24, 2025 custody hearings, we conclude that the trial court's custody award is supported by the record and we can discern no abuse of discretion. The trial court thoroughly and thoughtfully applied the evidence presented at trial to the custody factors and, having observed that Child "has two amazing parents who love him very deeply," N.T. Custody Hearing, 9/24/25, at 100, arrived at a well-reasoned decision to grant Father's request for shared physical custody. We can discern no reason to disturb the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/10/2026